Good morning, Council. Good morning, Your Honors, and may it please the Court, my name is Ashley Caballero-Daltrey and I represent the defendants and appellants in this case, the City of Phoenix and the defendant officers. I would like to reserve two minutes for rebuttal and I will watch my time. Thank you. This is a case involving allegations of several disparate interactions between police officers and decedent Timothy Lopez. In front of this Court is a narrow issue involving just two pieces of that interaction. The placement and transportation of Lopez in a police vehicle for the express purpose of getting him off of the hot pavement, out of the sun, and into the shade for medical attention. Counsel, before you get to the transportation, what about the restraint? So the restraint in this case was already decided at summary judgment by the district court and isn't on appeal at this time. One of the particular uses of force was the application of that RIP restraint and the district court held that summary gave summary judgment to the defendants for all of the uses of force up to and including application of the RIP restraint. And so that's not on appeal? Correct. That's not on appeal at this time. We're only looking at those two uses of force, the placement and the transportation. What about the knee? I thought the district court also found that there was excessive force for the use of the knee after the restraint was put on. That's correct. And that the district court found that that would go to the jury, not that there was excessive force. And you're not appealing that? We're not appealing that issue. Now, we're only appealing the limited placement and transportation because those are clear issues of law that can be decided by this Court on an interlocutory appeal. Now, counsel, I know you're framing this as narrow issues, but under Graham, we have to consider the totality of the circumstances, correct? Correct. And so as we're evaluating the qualified immunity claims, we're looking at everything up to and including movement, you know, the placement of the decedent into the car in RIP restraints and the transportation. Would you agree with that? I would agree with that if Graham, in fact, applies. But it's defendant's argument that neither the placement or the transportation is a proper excessive force claim. There might be other claims that would cover each of those actions. But because it's not a use of force, because it's not an excessive force claim, it isn't analyzed under Graham. Why is it not a use of force claim? Restraint, I mean, you know, the text of the Fourth Amendment says an unlawful, an unreasonable seizure. This is a seizure, isn't it? Yes, Your Honor. So why would we need an additional use of force beyond the reasonableness of the seizure itself? So every use of force is a seizure, but not every seizure is a use of force. And that's exactly the issue with the placement and the transportation. So, for example, a person might have a claim that an officer put them in the back of a vehicle without probable cause or without reasonable suspicion. And they could sue under the Fourth Amendment, and we would be analyzing whether or not the officers had probable cause or reasonable suspicion if it's a brief detention. And in this case, there actually was a false arrest claim, and the district court found that the officers had either probable cause or reasonable suspicion to detain Lopez. And so that's the kind of claim that a person could bring. I guess I'm struggling, you know, so a rip restraint, you know, they've used the word hog tying in the briefing as well. I guess it, after a person is handcuffed, there's an ankle strap that attaches to the ankle, and it can bring up a person's legs. That seems like a significant amount of force in terms of what it can limit someone from doing. Why is that not a use of force as a type of restraint? The restraint itself is a use of force, but the district court granted summary judgment on that use of force. Only on the initial use of force, not, it's not continuing to maintain him any rip restraint during the placement in the car and transportation. But we know from cases like County of Lansing. But can you just go back, why isn't the use of a rip restraint itself a use of force if it substantially limits a person's ability to move and actually places a lot of pressure on their own body weight on their chest, right? It creates the risk of a positional asphyxiation. So why isn't this force? Because I see those as two separate actions. The application of a rip restraint is a use of force that is an action that was decided by the district court. The placement in transportation is a different action. Counsel, could we just talk about the facts that you are referring to when you say placement? What specific facts are included in the placement from your view? So the placement is when officers Mosley, Stevens, Jimenez, and Lingenfelter helped pick Lopez up off the ground and placed him into the vehicle. While restrained. While restrained, yes, your honor. Sorry, just to clarify that. I thought the district court split that up in that the district court said that lifting him up, essentially hogtied, is one use of force. And then lying him prone in the car is another use of force. And I see the distinction between those two different uses of force. So the district court, let me pull up the specific page that was on. The district court listed out the uses of force that it saw. And I don't believe that it split those two specific uses of force. But let me just double-check because I don't want to tell you the wrong thing. So if you look at the record at ER-18, they talk so the district court lists on these like numbered things, number three is that they applied the rip restraint, and number four is they positioned him face down in the back of the police vehicle. That's placement, right? Yes, that's placement. But there's not the what you were suggesting, your honor, that there was something between the rip restraint and then the placement. The district court didn't break those down into two separate things, and that's ER-18. No, I think we were talking about the placement as one use of force. I was talking about it. I won't speak for my co-panelists. The placement as one use of force and then transporting as a separate use of force while he was restrained. What did the district court say about those? Did the district court address those separately? So it did break those two out into, as you said, the placement and the transportation. Just to Judge Bumate's question, there wasn't a third piece that was lifting him up. I think that the district court looked at the lifting him up and putting him in the vehicle as altogether on the placement piece of it, and then that's how the parties had been addressing it, and then the transportation as the subsequent drive, that less-than-a-minute drive around and over to the Walgreens. So, assuming we don't agree with the notion that keeping someone in a RIP restraint in a prone position is not a use of force, or in other words, let's say we concluded that it is, why do you think it was reasonable in order to be entitled to qualified immunity? So, in terms of the first prong, the reasonableness side of it, it was reasonable because the officers really didn't have any other option. Lopez was resisting. It's an undisputed record that he kicked one of the officers. You can see on the body-worn camera that Officer Mosley's camera falls onto the ground. You can also see that all of the officers are trying to ask him to stand and to walk. The officers testified that a suspect in a RIP restraint can walk even while RIP restraint is applied. He did not attempt to walk. They tried everything they could to get him up. But why is that undisputed? Because I think plaintiffs are alleging that he was almost passing out at the time that he was being lifted up, and I think Officer Stevens' camera indicates that his head's rolling back. And so it would seem to me that there are triable questions whether he was continuing to resist after the RIP restraints were applied. But even if he was not continuing to resist for the entirety of the time that they moved him, he did resist by failing to stand. He did resist by kicking Officer Mosley, kicking his camera off onto the ground. Those are disputed questions. Officer Mosley's camera fell. I don't know that it's clear from the video that it was based on a kick. But the district court also based its opinion on its analysis that the defendants hadn't provided any justification for why they did. So it wasn't just that he was resisting. It was that the court felt that there was no justification for it because it is that totality of the circumstance. You have to balance all the factors. And so I think the district court's decision had a couple deficiencies. First, it didn't analyze the quantum of force that was used with this application of the RIP restraint. So we don't know, are we dealing with deadly force? Are we dealing with intermediate force? And that's going to... But didn't it? I mean the district court was bringing up the police department's training manuals and the fact that a RIP restraint creates a heightened risk of injury and plaintiff's expert, specifically when there's been resistance and running and all of that exertion that occurred as we see in the video. And then being laid down prone in a squad vehicle in the RIP restraint, I thought the court was actually engaging with those facts that were supportive of the plaintiffs. But engaging in those facts and stating what the actual quantum of force are two different things. And there can't be a constitutional violation just based on a violation of defendant's policies. We have to look at the totality of the circumstance. So those are some of the totality, but it also includes the officers who just testified as to why they placed him face down and set him on his side. They didn't want him to roll. We also have to consider the short... But that was only during the front part, when they were on the asphalt, not when he was in the Tahoe. Even assuming you're right that he resisted while they put him into the Tahoe, they kicked the officer's body cam. None of that explains why they didn't put him upright while he was in the Tahoe. Officer Lingenfelter explicitly testified in his deposition that he put him face down because he was afraid that if he had put him on his side, well, he knew he couldn't sit him up because he wasn't sitting up. He couldn't put him on his side in the back because he was afraid that he would roll down off of the seat and into sort of the footwell area of the back of the car. And that is in the record. But I thought the district court said that there's a way to secure a person, even with a rip restraint, by loosening it and allowing them to be upright in the back of the car. If the person is willing to sit upright. And Officer Lingenfelter also testified that often suspects will go limp in an attempt to be left in a certain manner so then they can attack people after they open the door, for example. But here, because he wasn't willing to sit up, they couldn't have secured him in the way that the district court. Well, they never tried to sit him up. They did when they tried to get him to stand and walk outside. Yeah, I agree with that. Not in the car. Not in the car. They didn't have the opportunity to do so because they had already seen him failing to comply with compliance. They had the opportunity. They elected based on what had happened previously not to do it. They did have the opportunity. Officer Lingenfelter's testimony reflects how he was viewing the situation at the time and that he did think those things through at the time. But also, it was a relationship. But that's different than saying they didn't have the opportunity. He had the opportunity, but he elected to not take advantage of that because of what had happened previously. Is that fair? I think that's fair. I was going to ask counsel, there's a, as I saw the video, I saw all the videos, it seems as if there's like a plastic hump in the back of the Tahoe that he was resting on. Is that a fair statement where not only was he lying prone in a rip restraint in the back of the seat, but he was lying, his chest was lying, or body was lying on top of a hard surface. Is that correct? That's correct, Your Honor. So I guess I just go back to, I mean there may be reasons for the officers to have done what they did, but it just seems to me that there are tribal issues involved in whether it was reasonable to transport him in this way and to even place him in that way. But even if there are tribal issues, they're still entitled to qualified immunity on the second prong, the clearly established case law prong, because there's no case dealing with these situations, the transport and the placement here. And in fact, Plaintiff has... My question, though, didn't they all testify they knew that if you leave a defendant prone like that, there's an increased chance of asphyxiation? So they all knew the danger. But their training cannot clearly establish the law for constitutional violation. They understood there was some risk. Well, I mean, if you know something is clearly dangerous and then you do it anyway, that seems like to be clearly established law that you can't do that. But this was only a short less than two minute transportation, placement and transportation together less than two minutes. For the express purpose of getting him medical attention and getting him out of the heat and off of the pavement. Because in fact, one of Plaintiff's claims originally was that he was being exposed to the pavement. It was too hot and that was harming him as well. So this was their best way of resolving the issue. Well, that still doesn't explain why they didn't try and sit him upright. Can we get to your point that there's a distinction between the transportation and the placement? So the two officers that drove the Tahoe afterwards, we should be analyzing them differently under your view? Yes, Your Honor. We do have to analyze those differently. They were pled as two separate uses of force in Plaintiff's complaint. They were analyzed differently by the district court and they involved two different officers. Well, I thought you said the district court analyzed them together. So the placement in the vehicle and the transportation, the district court said those were two separate uses of force. It kind of mingled the analysis later in its analysis. The piece that I said it didn't analyze separate was picking him up off the ground. So picking him up and putting him in the car, that's one. Driving the car, that's second. But I guess to me, so you're saying the two officers that drove the Tahoe and then went in the front passenger seat should be analyzed differently than the four officers that placed him into.  And then why should we treat them differently? It is a separate action under County of Los Angeles v. Mendez. This Court has to analyze each separate alleged use of force separately and it's two different sets of officers. The officers Kozad and Lopez weren't involved at all in the picking him up or putting him in the vehicle. All they did was drive. But they were aware of his condition and I think plaintiffs made the allegations that he was in obvious distress before he was placed in the vehicle. And so as I understand plaintiffs' allegations, it's the two officers that transported him knew his condition. He was placed there. They didn't monitor or check in on him and then when they took him over to the Walgreens, by that point he was already going into a medical emergency. They were moving him there for the express purpose of getting him medical attention and the drive was less than a minute so they didn't, all they're trying to do is get him out of that hot pavement into the shade. They were concerned about him. They had already called fire for the express purpose. I don't think the issue is about trying to get him out of the hot pavement into a shady area. It was the manner in which they allowed him to be transported that way. They did the best that they understood that they could do at the time and no case law clearly establishes that that would be constitutional. The purpose of clearly established law is to put officers on notice of what violates constitutional rights. If they were already on notice that there was a heightened danger of harm then the purpose of having clearly established law is served. But the United States Supreme Court has repeatedly stated that the law cannot be at a high generality. It has to be clearly established. There needs to be a case that's on all Unless it's an obvious If it's an obvious case of a constitutional violation there does not have to be a specific case that's cited. Would you agree? I agree, Your Honor, but the United States Supreme Court has only found the obvious case exception in 8th Amendment cases and truly heinous prison context and has not found one. The Ninth Circuit has found obvious cases. Even for non-obvious what about the Drummond case? That seems to be the one that's been cited by the District Court and that involved body weight on a low-risk subject and the use of hopper restraints when it was unnecessary to do so. Why isn't that sufficient to put the officers on notice? Because in that case there actually was body weight on it. The officers were applying force. They were applying their body weight to that person in this limited context of what we're looking at on the appeal. There's no body weight being pushed. None of the officers are holding him down. None of the officers are shoving him. They're not putting shoulders in him. But the purpose of the rip restraint is to lift up a person's legs so that their own body weight is being pressed down on them. Why isn't that analogous? Because Drummond involves the actual placement of an officer's body weight on top of everything else that's going on. So it is another level of application of force that's just not present. So I guess in your view, unless there's a rip restraint case out there, there's no clearly established law? It has to be that specific in your mind? A rip restraint case involving putting someone in a vehicle and transporting them, because again, the actual application of the rip restraint was, we were granted summary judgment on that particular piece of it. Okay. Thank you, counsel.  Good morning, and may it please the court. Jesse Showalter of Robbins Curtin Malay and Showalter on behalf of Apelli Lara Gonzalez. This case is not about transport. I think that transport is a red herring. What the totality of the circumstances show is that in this narrow appeal all of the officers who are appealing witnessed a constitutional violation and failed to intervene in that. That is part of the totality of the circumstances facing these officers at the points over which they are appealing. There's simply no legal principle that allows for them to  liability for that, particularly when we have clearly established law in the form of Drummond and Blankenhorn. Counsel, what's your response to opposing counsel's retort that those cases are not specific enough to govern this case? Well, I think a fair reading of Drummond and Blankenhorn, and Blankenhorn does involve a hobble rip restraint, is that they put reasonable officers on notice. This idea that there has to be this extreme specificity for qualified immunity is really just a parody of what the Supreme Court has repeatedly said. What the Supreme Court has said in Taylor v. Riojas very recently, Hope v. Peltzer, and what the Ninth Circuit has repeatedly said is officers can be on notice that their conduct violates the Constitution even in novel factual circumstances. And the circumstances of this case are really not particularly novel. It's quite in line with Drummond, and it is also in line with Blankenhorn, and officers in this case specifically can't claim that they didn't know because they testified that in fact they've been trained that doing these very things could cause death. I want to go to, I think it was Judge Bumate's question for my colleague about distinguishing between the officers who had lifted Ramon and put him in the back of the Tahoe and the officers who actually drove the Tahoe. Factually, there is no real distinction in the knowledge that they had and the obligation they had under the United States Constitution for their prisoner. What Drummond says is that officers have an obligation and I'm going to quote from the District Court's order at page 24 of that order in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of force or a refusal without cause to alleviate its harmful effects constitutes excessive force. That's from Drummond. Yeah, but that's a different situation than other officers putting him in that dangerous situation and two other officers driving for a 90-second drive to the parking lot to bring him to safety in their view. I'm not sure it is, Your Honor, and the reason why is that if I'm a police officer and I have a prisoner and he's hog-tied and I say to my fellow officer, I've got to go do paperwork, you watch him, and that fellow officer has all the same knowledge that I have about what's happened up to that point, that fellow officer can't evade liability by saying, well, I was just the driver. Well, I mean, it's different if you said, watch him for 90 seconds while I go to the bathroom. Are you saying that that officer had an obligation at that point to untie the person? If that officer has all the same knowledge as the handing-off officer that we're thinking about, they know that this guy can die if left? I mean, I have a hard time seeing how you can distinguish those two things. I think you might be right on prong one. I just don't see how you get to prong two. I don't see what's clearly established law saying that other officer is then responsible. And I don't think we need clearly established law for that. I think that's part of officer's training, is you are responsible You always need clearly established law. I don't think we do for that component because I think that is a premise of all of this is that when you take someone into custody and that's why I'm fighting back on this, is whose custody is Ramon in when he's in that car? He's in the custody of COZAD and Officer Lopez. And they can't say, oh, we didn't know because they were right there and they knew. Now, I think that idea Why are you saying you don't need clearly established law for that? They're entitled to qualified immunity if there's no clearly established law saying that what they did was wrong. Because that's equally obvious. So you're just relying on the obviousness prong. That's the first day of training for every officer who enters the academy. But you have no other case besides the obviousness case. I don't have one for that specific principle. But I don't think it matters because it really is obvious I'm not so sure There's obvious cases that this one's like well, transport him 90 seconds so that we can help him get him out of the hot sun, get him medical attention All I'm asking you to do is drive him to the parking lot. But here's the problem with the way you just phrased that, Your Honor is you just accepted their jury arguments as being true. Because you said we were trying to get him out of the hot sun. Is that disputed? Absolutely. What do you think they were trying to do? A reasonable jury could say if these guys were that concerned about protecting Ramon they would not have violated their policies and tossed him into the backseat face down. It's all consistent, though. What do you think they were trying to do when they moved him to the parking lot? I think they wanted to get out of the street. I don't think they were thinking I don't think they were thinking about Ramon at all. Okay, fine. Even if it's that reason, that they wanted to get him out of the street so traffic safety, right? You have to acknowledge that it's undisputed they wanted him out of the street because it was a safety concern for the traffic. But that's a jury argument that they can make. But it's undisputed. I thought it's undisputed. I thought you just agreed with that. I agree that that's what they say. Okay, so it's undisputed that they So what's the disputed fact here? Why they transported him to the parking lot? Enlightened favoritism to you. The disputed fact is whether they had other ways they could have done it. No, no. Why did they transport him to the parking lot? I understand that the officers say that they transported him to the parking lot because they were trying to get him to medical care. Okay, but you're saying they did it just for traffic safety. I'm saying I think they wanted to get out of the street and out of the heat and they didn't care about Ramon at all. Even assuming that that's true, why is it obvious that an officer that's asked to drive someone 90 seconds away to a parking lot so that the streets are clear and safe, how is that obvious that they've committed a constitutional violation? Because they have a constitutional obligation that's recognized in every use of force case with respect to the people in their custody. That is an underlying premise of every single use of force case involving an arrest. My problem is that all the cases I've read are the officers that are actually doing the tackling or putting the pressure on, they're the ones being denied qualified immunity. I've never seen a case where follow-up officers who do a small task of transporting for 90 seconds are then held liable. But it's simply a continuation of the failure to intervene. Let's just say this. Even if we were just looking at the transportation part, the department manuals and the plaintiff's experts said that transporting an individual in this manner creates a heightened risk of serious harm and death. And they're the only ones responsible for the transportation piece of it. I don't see why Trumand and Blankenhorn would also not be relevant precedent for this particular point about continuing use of force when it's no longer necessary. I don't know that we need to get into an obviousness analysis of this. Why aren't those cases sufficient to inform an officer of the heightened risk of transporting someone that way? I think they are, Your Honor. And I think what is significant in line with Trumand as well as Hope v. Peltzer is these officers were trained that they could not transport a person in the fashion they did. They couldn't hog-tie. And something I wanted to go back to, they were trained that they could not hog-tie and they were trained they could not transport somebody face-down. They were also trained they had to monitor anybody in restraints. And they were the only officers responsible for transporting. So if we were to look at the transportation issue, those are the two officers that are responsible for that issue. That's correct. And that is one of the questions that came up with my colleague was the rip restraint. A rip restraint does not equal hog-tying. A rip restraint, it looks like a dog leash. On one end there's a clip that's identical to most dog leash clips. And what is supposed to happen is that the other end, which has a loop, is supposed to be fastened around the subject's ankles, and then the full length of the rip restraint is supposed to be clipped to the handcuff chain. That didn't happen here. Phoenix Policy, Phoenix Training specifically says do not shorten the length of the rip restraint because that results in hog-tying. That's what happened here. What's supposed to happen at the, in other words, they pulled it through and then attached it to the ankles. And that's why this was an illegal hog-tie under Phoenix Policy. What's supposed to happen at the point of transport and what the officers testified to is that that clip that is attached to the handcuffs is supposed to be unfastened and fastened to another point in the vehicle. Usually I think they use the steel rod at the base of the front seat seat belt. And officers have testified about other ways of doing it. Can I ask a question about that? What we were calling placement. For me, I see actually two different actions in the placement. One is lifting him up hog-tied, as you said, and then lying him prone in a Tahoe. I see those as two separate actions that laying prone I don't see as being reasonable. But lifting him up where he wasn't standing, that seems different. And so that we could analyze those two steps differently. Is there anything wrong with how I'm looking at it? I think the problem with that is that he was still hog-tied in violation of their own policies. And I don't think that we can I don't think we can go into a jury and say that the period during which he was being lifted is what caused his death. Right. I know. That's why I'm saying that that part, I think the cause of death was being prone in the Tahoe. But the lifting up part where he wouldn't walk, I mean, it's pretty clear he couldn't walk. And so how else were they supposed to transport him? Well, he couldn't walk because they'd hog-tied him. So if they had... The testimony from the officers is if the RIP restraint had been properly applied and had not been doubled over so that it was so short that a subsection could walk. He was not going to walk. But here's the problem with that. I mean, he was in such bad shape he wasn't going to walk because of the constitutional violation they'd already all witnessed. Well, the district court said that that was all that did not find that a constitutional violation. But I guess technically... No, no, no, no. Officer Mosley's kneeling on his back after the completion of the restraint. Fair enough. Okay. One minute. Can I ask this? Real quick. If someone in a RIP restraint refuses to walk, what are the officers supposed to do? I don't know for sure what the answer is because I don't have testimony on that. I know what happened here but I think the problem is that he was hogtied. He wasn't RIP restrained per policy. So they're already crossed the Rubicon into a constitutional violation at that point. What they should have done is unfasten the RIP restraint, correctly attached it to the scene if he could walk, taken him to the vehicle and then properly positioned him and belted him out. I wanted to follow up. Opposing counsel mentioned that it was undisputed that he was trying to resist after he was RIP restrained and that Officer Mosley's I guess body cam fell off because of a kick. Do you see this as an undisputed issue or what do plaintiffs allege instead? That is a disputed issue. The district court found it's a disputed issue. It's not clear how Ramon could have possibly kicked anybody volitionally while he's being carried in a hogtie fashion. We do not know for certain why Officer Mosley's body worn camera fell off. Ramon was being handled by multiple other officers. It's possible it got jostled. It's possible Officer Mosley got jostled but it's certainly there's a dispute because it's not shown on the video or any of the videos that Ramon actually kicked Officer Mosley. I would take a step back and go larger on that because obviously I can't I'm not appealing Judge Liberty's rulings on earlier things that happened but when Ramon is being held face down on 140 degree asphalt I think a reasonable jury can say that none of his movements could possibly be volitional, intentional attempts to resist that what's actually happening there is he's being tortured, he's dying and his body is moving spasmodically and I think a reasonable jury could conclude that that is exactly what's happening even if there were some indication that it was a movement by Ramon that knocked off Officer Mosley's body-worn camera. If there are no further questions I'd like to thank your honors for my time and request that the district court's order be affirmed. Thank you Counsel. Counsel you exceeded your time we'll give you two minutes for rebuttal. So a lot of what we're hearing in this argument goes back to training over and over again but as recently as last year this court recognized in Perez v. City of Fresno that training materials can influence the qualified immunity analysis but they cannot be determinative and I think we keep going back to what were the officers trained on because there is no case law that covers this specific issue so we're falling back on training. Counsel to me it's not about training it's that all officers said that they knew that if you leave someone in a prone position that they could asphyxiate So that's not about training it's about reasonableness. If they all know that a reasonable officer knows that someone is going to be, can asphyxiate that's what it's about it's not about their specific training They knew there was a risk of it from their training but that's different than for example knowing that if you shoot someone they will be hurt when they're shot because the training said that there was a heightened risk but there's not there's not the kind of clearly established case law that would back that up for the officers to understand it would be a constitutional violation because all they know is there is a heightened risk But they all knew it, right? They all knew that if you leave them someone in that position that they could die They did but the timing of that, how long it might take, what other circumstances are involved if there's pressure being applied by the officer They all knew it could happen instantly, right? I don't think the record reflects that they knew that it could happen instantly. I think the record reflects that they understood that there could be a heightened risk and we know from case law I guess the thing is I agree with you, the training is irrelevant to me but the fact is that they all knew and a reasonable officer would know that putting them in that position could kill them But that What's wrong with that? That isn't the qualified immunity analysis The qualified immunity analysis is whether the case law clearly establishes or a consensus kind of shows that obvious case exception or if it truly is an obvious case but the obvious case exception does not apply here and then we're falling back on training Thank you. Thank you counsel Thank you to both counsel The case just argued is submitted for decision by the court The next case on the calendar for argument is Wright Cell v. Concentric Healthcare Solutions
judges: RAWLINSON, BUMATAY, SANCHEZ